# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ELIZABETH CUNNINGHAM and ESTATE OF LOUISE CUNNINGHAM, ) ) ) ) Plaintiffs, ) ) ) v. ) ) EQUICREDIT CORPORATION OF ILLINOIS, THE LOAN CENTER, INC., and MARVIN HUNTER, ) ) ) ) Defendants. ) ) | Case No. 02 C 4810<br><br>Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Elizabeth Cunningham and the Estate of Louise Cunningham, sued EquiCredit Corporation of Illinois ("EquiCredit"),[1] The Loan Center, Inc., and Marvin Hunter in the Circuit Court of Cook County, alleging that each of the defendants committed various violations of state law and that EquiCredit committed two violations of federal law. Defendant EquiCredit removed the case to federal court on the basis of federal question jurisdiction. (R. 1, Notice of Removal.) EquiCredit and The Loan Center have each filed motions for summary judgment on Plaintiffs' Second Amended Complaint. (R. 50, EquiCredit ("EQ") Mot. for Summ. J.; R. 64, The Loan Center ("LC") Mot. for Summ. J.) For the reasons set forth below, the Court grants EquiCredit's motion for summary judgment as to Plaintiffs' TILA claims (Counts IV and V), and remands Plaintiffs' remaining claims to state court.

---

[1] Nationscredit Financial Services Corporation is EquiCredit's successor by merger.

## RELEVANT UNDISPUTED FACTS

Elizabeth Cunningham and her mother, Louise, owned and lived at a home located at 2315 South Central Park in Chicago, Illinois. (R. 53, EQ LR56.1(a)(3) St. ¶ 1.)[2] Louise lived there from 1984 until she passed away in 1999, and Elizabeth moved out of the home in 2003. (*Id.* ¶¶ 1-2.)

In February 1999, Plaintiffs' home was in a state of disrepair, and they sought funds to make home repairs and improvements. (*Id.* ¶ 7.) Marvin Hunter, a home improvement repair contractor, referred Elizabeth Cunningham to The Loan Center, a mortgage broker. Elizabeth entered into a loan brokerage agreement with The Loan Center on February 23, 1999. (*Id.* ¶ 8.) At The Loan Center, Elizabeth Cunningham met with employee Derwin Moore to fill out a Uniform Residential Loan Application. (*Id.* ¶ 13.) Moore told her that in order to qualify for a loan, Elizabeth would have to show that she had a job. (*Id.* ¶ 14.)

In her loan application, Elizabeth Cunningham falsely stated that: (1) she had been working at M & M Cleaning Services since 1997; (2) her income from the job was $1,800 per month; (3) she earned $675 per month by renting the first floor of her property; and (4) she and her mother both graduated from high school. (*Id.* ¶¶ 15-16.)[3] Elizabeth signed the loan application on behalf of herself and Louise. (*Id.* ¶ 17.) In April 1999, The Loan Center submitted the Cunninghams' loan application, along with false documents purporting to verify the information in the loan application,

---

[2] All citations to EquiCredit's Local Rule 56.1 statement of facts are undisputed by Plaintiffs unless otherwise indicated.

[3] The parties disagree about whether Elizabeth knew what she was representing and whether Moore influenced or convinced her to lie on her application. (R. 76, Pls.' LR56.1(b)(3)(B) St. ¶ 26.)

2

to EquiCredit, an Illinois corporation engaged in the business of mortgage lending. (*Id.* ¶ 3.)[4] EquiCredit approved Plaintiffs' loan application. (*Id.* ¶ 19.) Plaintiffs subsequently received a mortgage loan in the amount of $95,200.00.[5] (R. 65, LC LR56.1(a)(3) at ¶ 31.)

Plaintiffs and EquiCredit entered into a mortgage loan secured by Plaintiffs' property on May 27, 1999. EquiCredit provided Plaintiffs with Truth In Lending Act disclosures, but did not provide Plaintiffs with special loan disclosures required for "high cost" mortgage loans. (R. 53, EQ LR56.1(a)(3) St. ¶¶ 21-23.) At the closing, Plaintiffs also received a HUD-1 settlement statement. (*Id.* ¶¶ 24, 26, 28.) The settlement statement showed that the $95,200.00 mortgage loan would be used to pay off Plaintiffs' existing mortgage, make substantial repairs to their home and pay an existing overdue water bill. (R. 33, Second Am. Compl. ("Compl."), Pls.' Exs. L, M.) The loan proceeds were also used to pay a $6,350.00 broker's fee to The Loan Center and a $10,500.00 fee to D & E Services, which was represented in the settlement statement as a third party creditor. (*Id.* 28, 33; LC LR56.1(a)(3) St. ¶¶ 32-33.) Derwin Moore is the principal of D & E Services, but D & E Services has no connection with The Loan Center. (*Id.* ¶¶ 32-33.)

On June 2, 1999, EquiCredit disbursed the settlement proceeds to Plaintiffs and the $10,500 fee to D & E Services,[6] and Plaintiffs paid The Loan Center its broker's fee of $6,350. (R. 53, EQ LR56.1(a)(3) St. ¶ 27.) Neither D & E Services nor Moore remitted any portion of the $10,500 fee

---

[4]The parties disagree as to who falsified the attached documents, Moore or Elizabeth. The documents included 1997 and 1998 W-2 forms, two pay stubs, and a completed Request for Verification of Employment form. (R. 33, Second Am. Compl. ("Compl."), Pls.' Exs. C-F.)

[5]The loan amount was based on the appraised value of Plaintiffs' home after the expected improvements were made. (R. 56, LC LR56.1(a)(3) St. at ¶ 30.)

[6]The parties dispute whether D & E Services was a third-party creditor of Plaintiffs.

3

to The Loan Center. (*Id.* ¶ 34.)

Plaintiffs sold their home in April of 2003. (*Id.* ¶ 37.) In connection with the sale of the home, EquiCredit's mortgage was released in exchange for a short sale payoff in the amount of $100,534.10. (*Id.* ¶ 38.)

## LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *See LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997). The nonmovant may not rest upon mere allegations, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also LINC*, 129 F.3d at 920. In deciding a motion for summary judgment, a court must review the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ANALYSIS

### I. Federal Claims

Out of the thirteen claims brought by Plaintiffs in this case, only two of them arise under federal law: the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, as amended by the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. §§ 1602(aa) & 1639, and its

4

implementing Federal Reserve Board Regulation Z, 12 C.F.R. § 226. Plaintiffs allege that EquiCredit violated TILA by: (1) failing to provide them with disclosures required for "high cost" mortgages in violation of 15 U.S.C. §§ 1639(a)(1), (a)(2)(A), and (b)(1); (2) engaging in a pattern and practice of extending credit for "high cost" mortgages based on a consumer's collateral, without regard to the consumer's repayment ability in violation of 15 U.S.C. § 1639(h); and (3) failing to take any action necessary to terminate its security interest after Plaintiffs' notice of rescission in violation of 15 U.S.C. § 1635(b). (R. 33, Compl.)

All of Plaintiffs' federal claims fail because Plaintiffs cannot establish that EquiCredit issued them a "high-cost" mortgage loan as defined by HOEPA. A HOEPA loan is a mortgage loan secured by a consumer's principal dwelling, other than a loan made to finance the dwelling's original construction or acquisition, in which the loan's annual percentage rate of interest exceeds ten percent, or the "total points and fees" payable by the consumer at or before the closing exceeds the greater of eight percent of the total loan amount or $400. 15 U.S.C. § 1602(aa)(1)(A) & (B). A lender that makes such a "high-cost" mortgage loan is required to provide several specific disclosures not less than three business days before the transaction is consummated. 15 U.S.C. § 1639(a) & (b).

In its motion for summary judgment, EquiCredit admits that it did not provide HOEPA disclosures, but argues that it was not required to do so because Plaintiffs' mortgage loan was not a "high cost" loan. (R. 52, EQ Mem. at 5.) On its face, the Points and Fees Compliance Worksheet attached to Plaintiffs' loan states that the total "points and fees" payable by Plaintiffs was 7.97 percent of the total loan amount—just below the eight percent threshold provided for by § 1602(aa)(1)(B)(i) of HOEPA. (R. 33, Compl., Ex. I.) Plaintiffs contend, however, that the mortgage

5

loan was a "high cost" loan because the $10,500.00 payment to D & E constituted a kickback or disguised broker's fee to The Loan Center. (R. 74, Pls.' Resp. at 4-6.) Plaintiffs' argument is a non-starter, however, because they admit that neither D & E nor Moore remitted to The Loan Center any portion of the $10,500.00 payment that was disbursed to D & E in connection with EquiCredit's mortgage loan to Plaintiffs. (R. 78, Pls.' Resp. to EQ's LR56.1(a)(3) St. ¶ 34.)

Alternatively, Plaintiffs contend for the first time that the $10,500.00 payment to Moore (doing business as D & E) must be considered a part of the total compensation paid to Plaintiffs' mortgage brokers. (R. 74, Pls.' Resp. at 5-7.) Under TILA, in determining whether the total "points and fees" exceed the eight percent threshold, "all compensation paid to mortgage brokers" is counted. 12 C.F.R. § 226.32(b)(1)(ii). Plaintiffs, however, "may not amend [their] complaint through arguments in [their] brief in opposition to a motion for summary judgment." *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996). Thus, this argument fails.

However, even assuming *arguendo* that Plaintiffs' newly asserted theory was properly pled in their complaint, Plaintiffs' claim fails because Moore is not a mortgage broker. Therefore, the $10,500 payment was not a broker's fee. Moore worked for The Loan Center in the capacity of a loan officer, and he has never been an officer, director or shareholder of The Loan Center. (R. 56, LC LR56.1(a)(3) St. ¶¶ 18-19.) The Loan Center does not own, operate or have any affiliation with D & E. (R. 53, EQ LR56.1(a)(3) St. ¶ 31.)

Finally, Plaintiffs contend that even if D & E Services was paid $10,500.00 as a third-party creditor instead of as a mortgage broker, this payment would be equivalent to a "hidden finance charge" which must be included in the HOEPA calculation for a high-cost mortgage. (R. 74, Pls.' Resp. at 8.) However, in order for this payment to be a "hidden finance charge," EquiCredit must

6

have retained a portion of the $10,500.00 payment disbursed to D & E. *See, e.g., Walker v. Wallace Auto Sales, Inc.,* 155 F.3d 927, 932 (7th Cir. 1998). As explained above, Plaintiffs admit that EquiCredit retained no portion of the $10,500.00. As each of Plaintiffs' arguments attempting to show EquiCredit gave them a high-cost mortgage loan fails, Plaintiffs cannot prevail on their federal TILA claims.

## II. State Law Claims

Having dismissed the only federal claims in this lawsuit, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c)(3) (a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction.") Because this case was removed from state court, the Court remands the remaining state law claims to the Circuit Court of Cook County. *See also Key Outdoor Inc. v. City of Galesburg, Ill.,* 327 F.3d 549, 550 (7th Cir. 2003) ("Since this case was removed from state court, if all the federal claims supporting jurisdiction are dismissed and jurisdiction over the remaining state law claims is not retained, the appropriate procedure would be to remand the remaining state law claims to the Circuit Court of Cook County.")

## CONCLUSION

In view of the foregoing, the Court grants EquiCredit's motion for summary judgment with prejudice as to Plaintiffs' federal TILA claims (Counts IV and V), denies The Loan Center's motion for summary judgment without prejudice, and remands the remaining state law claims to the Circuit Court of Cook County. The parties are strongly encouraged to revisit settlement possibilities for this delayed lawsuit before proceeding in state court.

ENTERED:

Ruben Castillo
United States District Judge

Dated: March 31, 2006